PROB 12C
(Rev.2011)

# United States District Court
for
## Middle District of Tennessee

## Superseding Petition for Summons for Offender Under Supervision
### [Supersedes Petition Filed as Docket Entry No. 12]

Name of Offender: <u>Justin Roark</u>  Case Number: <u>3:13-00225-01</u>

Name of Sentencing Judicial Officer: <u>Honorable J. Ronnie Greer, U.S. District Judge, EDTN</u>

Name of Current Judicial Officer: <u>Honorable William J. Haynes, Jr., Chief U.S. District Judge</u>

Date of Original Sentence: <u>July 11, 2011</u>

Original Offense: <u>18 U.S.C. § 922(g) and 924(a)(2) Convicted in Possession of a Firearm</u>

Original Sentence: <u>30 months' custody and three years' supervised release</u>

Type of Supervision: <u>Supervised release</u>  Date Supervision Commenced: <u>August 1, 2013</u>

Assistant U.S. Attorney: <u>William Lee Deneke</u>  Defense Attorney: <u>Mariah A. Wooten</u>

## PETITIONING THE COURT

<u>X</u>  To Consider Additional Violations/Information.
___  To issue a Summons.
___  To issue a Warrant.

## THE COURT ORDERS:
☐ No Action
☐ The Issuance of a Warrant:
 ☐ Sealed Pending Warrant Execution
  (cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☐ Other
☒ Consideration of Additional Violations/Information.

Considered this **19th** day of **March**, 2014,
and made a part of the records in the above case.

_____
William J. Haynes, Jr.
Chief U.S. District Judge

I declare under penalty of perjury that the foregoing is true and correct.
Respectfully submitted,

_____
Amanda M. Russell
U.S. Probation Officer

Place  Nashville, TN

Date  March 19, 2014

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry No. 12, has been amended as follows:

 Violation No. 1 - has been updated to include additional positive drug tests results.

 Violation No. 2 - has been added to report the defendant has failed to make payments toward his special assessment.

The probation officer believes that the offender has violated the following condition(s) of supervision:

| Violation No. | Nature of Noncompliance |
|---|---|

**1.**  **The defendant shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substance, except as prescribed by a physician.**

Since beginning supervision, Mr. Roark has tested positive for illegal drugs on seventeen different occasions, each confirmed positive by the testing laboratory.

| | |
|---|---|
| August 1, 2013 | marijuana |
| October 16, 2013 | marijuana, methamphetamine, and amphetamine |
| November 18, 2013 | marijuana |
| December 2, 2013 | marijuana, methamphetamine, and amphetamine |
| December 11, 2013 | marijuana |
| December 19, 2013 | marijuana |
| December 26, 2013 | marijuana |
| January 2, 2014 | marijuana |
| January 7, 2014 | marijuana |
| January 16, 2014 | marijuana |
| January 22, 2014 | marijuana, methamphetamine, and amphetamine |
| January 27, 2014 | marijuana |
| February 4, 2014 | marijuana |
| February 13, 2014 | marijuana |
| February 24, 2014 | marijuana |
| March 5, 2014 | marijuana |
| March 12, 2014 | marijuana |

When questioned by the probation officer on August 1, 2013, Mr. Roark admitted to using marijuana, while in residency at the residential re-entry center, three weeks prior.

When questioned by the probation officer on October 29, 2013, Mr. Roark denied any new use of illegal substances. He reported his last drug use was in July for marijuana, which he previously admitted to the probation officer on August 1, 2013. Mr. Roark denied using methamphetamine.

When questioned by the probation officer on November 18, 2013, Mr. Roark admitted to using marijuana on November 15, 2013. He reported he made a "stupid mistake" and that there was just something about marijuana that made him feel good.

When questioned by the probation officer on December 2, 2013, Mr. Roark denied any new use of illegal substances. This time, he reported his last drug use was marijuana on November 15, 2013, which he previously admitted to the probation officer to on November 18, 2013. Mr. Roark denied using methamphetamine.

Following Mr. Roark's positive drug test for marijuana on December 2, 2013, he denied any new use of the illegal substance. Based on his previous admission of using marijuana on November 15, 2013, the probation officer knew the illegal drug would not metabolize out of his system until on or about December 15, 2013. After he continued to test positive, following that date, Mr. Roark was, again, questioned by the probation officer and he continued to deny using marijuana since November 15, 2013.

On January 7, 2014, the day he reported on his summons, Mr. Roark, again, admitted to the use of marijuana, but continued to deny using methamphetamine. Mr. Roark admits he makes "stupid decisions" regarding his use of marijuana. His last use of the drug was January 4, 2014.

In an effort to correct Mr. Roark's ongoing drug use, the probation officer met with Mr. Roark and his attorney on January 16, 2014. He admitted to last using marijuana January 4, 2014, and continued to deny any use of methamphetamine. Mr. Roark reported he did not want to got to prison and would stop using illegal drugs to keep from going back.

Additionally, on January 22, 2014, Mr. Roark, again, tested positive for marijuana, methamphetamine, and amphetamine. Based on his prior admission to last using marijuana on January 4, 2014, the probation officer was aware the marijuana was still metabolizing out of his system. Mr. Roark denied any new use of the illegal substance or using methamphetamine. His urine sample was confirmed positive for marijuana, methamphetamine, and amphetamine.

On January 23, 2014, the probation officer spoke with Mr. Roark, by telephone, regarding his positive drug test for methamphetamine on January 22, 2014. He initially denied using the illegal substance, but after further questioning, Mr. Roark admitted to using the drug on January 17, 2014, just one day after meeting with the probation officer and his attorney to address his ongoing drug use.

Following Mr. Roark's positive drug test for marijuana on January 27, 2014, the probation officer questioned him as to why the illegal drug would still be in his system. He denied any new use of the marijuana, reporting his last use was January 17, 2014. The probation officer requested a nanogram level report from the testing laboratory on February 25, 2014. The report was received on March 17, 2014, and indicated new use marijuana between the dates of January 27, 2014, and February 24, 2014.

After each subsequent positive drug test, the probation officer continued to question Mr. Roark as to why the illegal drug would be in his system. He continued to deny new use of marijuana and contends his last use of the illegal drug was January 17, 2014.

2.    **The defendant shall pay a special assessment in the amount of $100.**
Even though he is employed on a full-time basis, Mr. Roark has failed to make a payment towards his special assessment since beginning supervision on August 1, 2013.

**Compliance with Supervision Conditions and Prior Interventions:**
Justin Roark is employed, full-time, by United Record Pressing, and lives in Nashville, Tennessee. He began his three-year term of supervised release on August 1, 2013, and is due to terminate supervision on July 31, 2016. Mr. Roark was sentenced in the Eastern District of Tennessee and his supervision was transferred to the Middle District of Tennessee on November 8, 2013.

Following Mr. Roark's positive drug test on August 1, 2013, he was referred to Centerstone Mental Health for a substance abuse assessment and weekly outpatient treatment. His therapist is aware of his continued use of illegal substances and he is currently participating in treatment as recommended, around his work schedule. The probation officer has given Mr. Roark multiple verbal reprimands for his illegal drug use and afforded him the opportunity to participate in outpatient substance abuse treatment, as well as inpatient substance abuse treatment. He continues to test positive for illegal drugs and reports he can stop using illegal drugs on his own.

**Update of Offender Characteristics:**
There is no additional information relevant to this section that has not already been provided in this petition.

**U.S. Probation Officer Recommendation:**
It is respectfully requested that these additional violations be considered at a revocation hearing to be held before Your Honor on March 28, 2014. These new violations have been discussed with Assistant U.S. Attorney William Lee Deneke, who concurs with the recommendation.


Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

# SENTENCING RECOMMENDATION
## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
## UNITED STATES V. JUSTIN ROARK, CASE NO. 3:13-00225-01

**GRADE OF VIOLATION:** C
**CRIMINAL HISTORY:** VI

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003  PROTECT ACT PROVISIONS

| | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 2 years (Class C Felony) 18 U.S.C. § 3583(e)(3) | 8-14 months U.S.S.G. § 7B1.4(a) | No recommendation |
| SUPERVISED RELEASE: | 36 months less any term of imprisonment 18 U.S.C. § 3583(h) | 1-3 years U.S.S.G. § 5D1.2(a)(2) | No recommendation |

18 U.S.C. § 3583(g)(4) If the defendant, as a part of drug testing, tests positive for illegal controlled substances more than 3 times over the course of 1 year, the Court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3).

**Guideline Policy Statements:** Upon a finding of a Grade C violation, the Court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision. U.S.S.G. § 7B1.3(a)(2).

Respectfully Submitted,

Amanda M. Russell
U.S. Probation Officer


Approved:

Britton Shelton
Supervisory U.S. Probation Officer



Toxicology Services
1111 Newton Street
Gretna, Louisiana USA
800-433-3823 Toll-free Phone
504-361-8989 Phone
504-361-8235 Fax

March 12, 2014

To: Bill Lord
Tennessee Middle Probation

Email: William_Lord@tnmp.uscourts.gov
RE: Request for THCA Interpretation for Donor Roark/230455.

This memo is in response to your request for additional information concerning the length of time that marijuana can stay in the body.

Marijuana is stored in the body longer than many other drugs. Depending upon the type of use, the length of time it can stay in the body fluctuates. Elimination of drug is expressed in terms of a half-life, which is the length of time it takes for half of the drug to be eliminated. The average half-life for marijuana is 24 to 48 hours for an occasional user and 48 to 72 hours for a chronic user.

Alere utilizes Gas Chromatography coupled with Mass Spectrometry (GC/MS) or Liquid Chromatography with Tandem MS (LCMSMS) to identify 11-nor-9-carboxy-delta-9-tetrahydrocannabinol (THCA), the primary metabolite from marijuana use.

When evaluating specimens close in time, urine concentration is a factor which can complicate the interpretation. As urine concentration fluctuates, drug level fluctuates; therefore, correction for the dilution or concentration of the urine is essential prior to evaluating whether a donor has reused the drug in a span of time between drug test collections. The correction for concentration is called a creatinine normalization procedure. A random urine creatinine should be in the range of 100 to 200 mg/dl with an average of approximately 170 mg/dl. To compensate for the dilution effect, the drug concentrations are normalized and reported as nanogram of drug per milligram of creatinine.

The specimens listed below were submitted for analysis at Alere Toxicology Services, Inc. yielding the following results:

| Date Collected | Specimen Number | THCA ng/mL | Creatinine mg/dL | Normalized THCA Value (ng THCA/mg Creatinine) |
|---|---|---|---|---|
| 1/22/14 | B02438995 | 705<br>AMP 1790<br>MAMP2135<br>D-Meth97% | 398.2 | 177.0 |
| 1/27/14 | B02439011 | 247 | 476.6 | 51.8 |
| 2/4/14 | B02439030 | 109 | 109.3 | 99.7 |
| 2/13/14 | B03016978 | 367 | 153.4 | 239.2 |
| 2/24/14 | B03016959 | 971 | 368.0 | 263.9 |
| Last used: 1/17/2014 as Social User | | | | |

www.aleretoxicology.com

William Lord provided information that this donor was a social user and last used 1/17/14, however considering the number of positive results obtained from this donor prior to 1/17/14 this interpretation is based on chronic use.

In the October 2008 issue of the Journal of Analytical Toxicology, Dr. Huestis et.al. published data on the clearance of THCA in the urine of users ranging from social to chronic. Test subjects admitted to the study with a normalized THCA value of greater than 150 ng/mg cleared the THCA in a mean of 15.4 days ±9.8 days and a maximum of 29.8 days.

It is my opinion the donor continues to use marijuana; I base this opinion on the increase in THCA/Creatinine ratio observed on 2/4, 2/13 and 2/24/2014. In the absence of prescription information, the presence D-methamphetamine suggests use of illicit methamphetamine.

Please do not hesitate to contact me if additional information is needed. I can be reached at 800-433-3823 #68237 or via email to david.green@alere.com

Regards,

cn=David A. Green, o, ou,
email=david.green@alere.com, c=US
2014.03.12 17:07:57 -05'00'

David Green, Ph.D., DABCC (CC&TC), FACB
Laboratory Director

LF021
REV 05/01

# VIOLATION WORKSHEET

1. **Defendant** Justin Roark

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 3:13CR00225 - 1

3. **District/Office** Middle District of Tennessee

4. **Original Sentence Date** 7 / 11 / 2011
                          *month   day   year*

5. **Original District/Office** Eastern District of Tennessee
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)* 2:10-CR-129-01

7. **List each violation and determine the applicable grade (see §7B1.1):**

   | Violation(s) | Grade |
   |---|---|
   | Shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except, as prescribed by a physician. | C |
   | Shall pay a special assessment in the amount of $100.00 | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))*  —  **C**

9. **Criminal History Category** *(see §7B1.4(a))*  —  **VI**

10. **Range of Imprisonment** *(see §7B1.4(a))*  —  **8 - 14** months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

    ☐ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

    ☒ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

    ☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

**Defendant** Justin Roark

12. **Unsatisfied Conditions of Original Sentence**

   List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

   Restitution($) _____     Community Confinement _____

   Fine($)        _____     Home Detention         _____

   Other          $100 special assessment     Intermittent Confinement _____

13. **Supervised Release**

   If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

   Term: _____ to _____ years

   If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

   Period of supervised release to be served following release from _____
   imprisonment:

14. **Departure**

   List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002